UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRUCE BREITWEISER and GARY L. SEYMOUR, INDEPENDENT EXECUTOR OF THE ESTATE OF IVA CHAMPLUVIER, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-2043-B |
| CHESAPEAKE ENERGY CORP., CHESAPEAKE OPERATING, LLC, CHESAPEAKE ENERGY MARKETING, INC., STATOIL USA ONSHORE PROPERTIES, INC., ANADARKO E&P ONSHORE LLC, MITSUI E&P USA LLC, and CHIEF EXPLORATION AND DEVELOPMENT, LLC, | § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Remand and Conditional Motion to Certify for

Interlocutory Appeal (Doc. 20) and Plaintiffs' Motion to Strike (Doc. 56). For the reasons stated

below, the Court **DENIES** each motion.

## I.

## BACKGROUND

This is a removal case. On June 8, 2015, Bruce Breitweiser and Gary Seymour (Plaintiffs)

filed their Original Petition in state court in Dallas County, Texas. Doc. 1, Notice of Removal 2. On

Thursday, June 11, 2015, the Dallas County District Clerk issued citations for service. Doc. 1, Ex.

A-3.[1] The following Monday, June 15, 2015, Chesapeake Energy Corporation, Chesapeake Operating, LLC, and Chesapeake Energy Marketing, Inc. (Chesapeake Defendants), filed an Answer to Plaintiffs' Petition in state court and then removed the case to federal court under 28 U.S.C. §§ 1441 and 1446. Doc. 1, Notice of Removal 1. The next day, Plaintiffs served Chesapeake Defendants, Statoil USA Onshore Properties, Inc. (Statoil), Anadarko E&P Onshore LLC (Anadarko), Mitsui E&P USA LLC (Mitsui), and Chief Exploration and Development, LLC (Chief). Doc. 20, Pls.' Mot. to Remand 3. Soon after, Plaintiffs filed their Motion to Remand and Conditional Motion to Certify for Interlocutory Appeal. Doc. 20. Chesapeake Defendants responded. Doc. 54.[2]

At issue in Plaintiff's Motion to Remand is whether Chesapeake Defendants could file an answer in state court and then immediately remove to federal court before Plaintiffs had a reasonable opportunity to effect service. Plaintiffs argue that Chesapeake Defendants' removal violates the forum-defendant rule, rendering the removal procedurally defective. Chesapeake Defendants counter that the rule's plain language allows removal.

## II.

## REMOVAL LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life*

---

[1] Plaintiffs indicate that the citation "was not issued until Friday, June 12, 2015." Doc. 20, Pls.' Mot. to Remand 2 (citing Declaration of Dan McDonald, App. 45). Mr. McDonald's declaration relies upon the docket sheet from the Dallas County Clerk's website. *Id.* The physical citations are dated June 11.

[2] The response, however, came five days after the response deadline set out in Local Rule 7.1. Plaintiffs replied and moved to strike the response as untimely. Doc. 56. Although Chesapeake Defendants' Response was untimely, its timing has not interfered with the decisional process; therefore, the Court will consider it in its analysis of the present motions, which are now ripe for review.

*Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The removal statute authorizes defendants to remove any civil action from state court to federal district court if the district court would have original jurisdiction (e.g., through federal question or diversity jurisdiction). 28 U.S.C. § 1441. This, however, raises "significant federalism concerns" because removal effectively "deprive[s] the state court of an action properly before it." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995)). As a result, the removal statute must be strictly construed, and "any doubt about the propriety of removal must be resolved in favor of remand." *Id.* at 281–82; *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

## III.

## REMOVAL ANALYSIS

Congress has enacted a comprehensive statutory scheme for the removal of state court actions to federal court. 28 U.S.C. §§ 1441–1455; *see also Sullivan v. Novartis Pharmaceuticals Corp.*, 575 F. Supp. 2d 640, 645–46 (D.N.J. 2008). Under this scheme, defendants may remove to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1441; *see also* 28 U.S.C. § 1332. But "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [i.e., diversity jurisdiction] may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). This is often referred to as the "forum-defendant rule." *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 391 (5th Cir. 2009). Essentially, a defendant cannot remove to federal court on diversity grounds if the defendant or a co-defendant is (1) a forum defendant—a citizen of the state in which the plaintiff originally filed the case—that (2) has been properly joined and served.

Violating the forum-defendant rule renders removal procedurally defective. *See id.* at 392–94.

At issue is the effect of the statute's "properly joined and served" language. Chesapeake Defendants removed on the basis of diversity jurisdiction. Plaintiffs do not challenge removal on jurisdictional grounds. Complete diversity existed at the time of removal and continues to exist.[3] Rather, Plaintiffs challenge removal on procedural grounds. They claim removal violated the forum-defendant rule. The parties do not dispute the material facts. At the time of removal, Statoil, Anadarko, and Chief were all forum defendants,[4] Chesapeake Defendants were nonforum defendants, and Chesapeake Defendants removed before Plaintiffs had an opportunity to serve any of the defendants (forum or nonforum). The parties dispute whether Chesapeake Defendants could remove before Plaintiffs had a reasonable opportunity to serve the forum defendants. Said another way, Plaintiffs argue that Chesapeake Defendants' "snap removal" to federal court violates the forum-defendant rule.[5] *See* 28 U.S.C. § 1441(b)(2). This is a matter of first impression before this Court.

## A.    *Snap Removal*

Snap removal appears to be an emerging litigation tactic used by forum and nonforum defendants alike to circumvent the forum-defendant rule. The forum-defendant rule applies to properly joined and served forum defendants. For purposes of the rule, courts generally do not

---

[3] Plaintiffs are citizens of Pennsylvania. Doc. 1, Notice of Removal 3. Chesapeake Defendants are citizens of Oklahoma; Statoil is a citizen of Texas; Anadarko is a citizen of Texas and Delaware; Mitsui is a citizen of Japan; and Chief is a citizen of Texas. *Id.* at 3–5. Additionally, the amount in controversy is greater than $75,000. *Id.* at 5–6.

[4] Since Plaintiffs filed their Motion to Remand, Plaintiff Breitweiser and Defendants Anadarko, Mitsui, and Chief have been dismissed from the case. Docs. 41, 52, 53, 59.

[5] The term snap removal appears in Plaintiffs' briefing. Pls.' Br. in Supp. 2. Other courts do not appear to have used this term of art, but this Court finds it useful for distinguishing the removal in this case from an ordinary removal.

consider unserved forum defendants. *Ott v. Consolidated Freightways Corp. of Delaware*, 213 F. Supp.

2d 662, 665 (S.D. Miss. 2002) ("[C]ourts have held, virtually uniformly, that . . . an unserved

resident defendant may be ignored in determining removability under 28 U.S.C. § 1441(b)."). This

allows state court defendants to circumvent the forum-defendant rule by removing cases to federal

court on diversity grounds almost immediately after a plaintiff files in state court, but before the

plaintiff has the opportunity to formally serve a forum defendant. The defendant removes while any

forum defendants are still unserved, so they are ignored for purposes of the forum-defendant rule.

This tactic, which the Chesapeake Defendants utilized here, has been referred to as snap removal.[6]

The hallmark of a snap removal is its timing: a snap removal occurs (1) just after the state

court case has been filed, and (2) just before the plaintiff has the opportunity to serve any forum

defendants. This particular timing of events creates a possible loophole in the forum-defendant rule

based on the "properly joined and served" language. 28 U.S.C. § 1441(b)(2). This loophole has been

used by both forum and nonforum defendants with variable rates of success for each.

District courts have reached competing conclusions on the viability of snap removal. *See*

*Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316–18 (D. Mass. 2013) (collecting cases and

describing the split of authority). Some deny remand, holding that the forum-defendant rule's plain

language governs, while others grant remand, deciding that the end result of a literal application

defeats congressional intent. *Compare Confer v. Bristol-Myers Squibb Co.*, 61 F. Supp. 3d 305, 306

---

[6] Snap removals can occur only in removal cases based solely on diversity jurisdiction where complete diversity exists. First, snap removals occur only in diversity based removal cases because snap removals are procedurally relevant only when the forum-defendant rule applies, and the forum-defendant rule does not apply to non-diversity based removals. *See* 28 U.S.C. §§ 1441(a)–(b)(2). Second, complete diversity must exist in snap removal cases; otherwise, courts would simply remand for lack of subject matter jurisdiction. *See Ott*, 213 F. Supp. 2d at 664 ("[C]itizenship of all named defendants, *whether served with process or not*, must be considered in determining whether complete diversity exists.") (emphasis in original).

(S.D.N.Y. 2014) (granting remand), *with Carrs v. AVCO Corp.*, No. 3:11-CV-3423-L, 2012 WL 1945629, at *1 (N.D. Tex. May 30, 2012) (denying remand). Thus far, courts have received little guidance from appellate authorities.

Congress is silent on the issue. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011 (FCJVCA), Pub. L. No. 112-63, 125 Stat. 758 (revising forum-defendant rule language without addressing snap removal issue); *see also* H.R. Rep. No. 112-10, at 11–12, *reprinted in* 2011 U.S.C.C.A.N. 576, 580 (explaining revisions without addressing snap removal issue). Additionally, neither the Supreme Court nor the circuit courts have had the opportunity to resolve the issue.[7] The parties bring three circuit court decisions to the Court's attention; unfortunately, none directly address snap removals. *Goodwin v. Reynolds*, 757 F.3d 1216, 1221 (11th Cir. 2014) (assuming *arguendo* that snap removal was appropriate despite considering it gamesmanship); *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001) (addressing in dicta); *Pecherski v. Gen. Motors Corp.*, 636 F.2d 1156, 1161 n.6 (8th Cir. 1981) (same). These cases provide limited guidance.

By contrast, an overwhelming amount of case law exists at the district court level supporting both sides of the split. The Court will address the authority it finds most applicable to this case. Courts in the Northern District of Texas have addressed snap removal or quasi snap removal on three occasions. *See Carrs*, 2012 WL 1945629 (Lindsay, J.); *Davis v. Cash*, No. 3:01-CV-1037-H, 2001 WL 1149355 (N.D. Tex. Sept. 27, 2001) (Sanders, J.); *Recognition Commc'ns, Inc. v. Am. Auto.*

---

[7] District courts either remand the case, stifling appellate review under 28 U.S.C. § 1447(d), or deny remand forcing plaintiffs to litigate the case to final judgment before they can appeal. *See Black Fire Fighters Ass'n, Inc. of Dall., Tex. v. City of Dall.*, 233 F. App'x 386, 386 (5th Cir. 2007).

*Ass'n*, No. 3:97-CV-0945-P, 1998 WL 119528 (N.D. Tex. March 5, 1998) (Solis, J.).[8] These cases provide useful guidance.

First, in *Recognition Communications, Inc.*, the court encountered something similar to a snap removal (pre-service removal by nonforum defendants), but analyzed it under the removal statute's unanimity requirement before remanding. 1998 WL 119528, at *2, 6 (citing 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been *properly joined and served* must join in or consent to the removal of the action.")); *see also Humphries v. Elliot Co.*, 760 F.3d 414, 417 (5th Cir. 2014). Nonetheless, it did manage to address snap removal and state a rule, if only in dicta. *Recognition Commc'ns, Inc.*, 1998 WL 119528, at *3 n.3 ("[I]f Plaintiff had served one of the non-resident Defendants, this case could have been properly removed by the served Defendant under Section 1441(b), regardless of the presence of a[n unserved] resident defendant."). This rule shaped the *Davis* court's holding.

Next, in *Davis*, the court dealt with a pre-service removal thirty-seven days after the case was filed in state court. 2001 WL 1149355, at *1. At issue was whether removal was proper when no defendant had been served. *Id.* Pre-service, a nonforum defendant had filed an answer in state court and then removed to federal court. *Id.* at *2. The court determined that the defendant's answer constituted a general appearance, satisfying the requirement derived from the "properly joined and served" language that at least one defendant must be considered served prior to removal. *Id.* It began with the rule that, in diversity cases, the district court applies state law to determine whether service

---

[8] Two of the three cases address removals that are, at best, quasi snap removals. While removal occurred before the plaintiff served any of the defendants, it did not happen immediately. *Davis*, 2001 WL 1149355, at *1 (thirty-seven days after plaintiff filed suit); *Recognition Commc'ns, Inc.*, 1998 WL 119528, at *1 (sixteen days after plaintiff filed suit).

is valid for removal purposes. *See id.* (citing *Freight Terminals, Inc. v. Rider Sys., Inc.*, 461 F.2d 1046, 1052 (5th Cir. 1972)). Then, it concluded pursuant to Texas Rule of Civil Procedure 121 that the defendant was considered served. *Id.* (quoting Tex. R. Civ. P. 121 ("An answer shall constitute an appearance of the defendant so as to dispense with the necessity for the issuance or service of citation upon him.")). *Id.* Following a plain language approach and drawing on the dicta in *Recognition Communications, Inc.*, the court established a general rule that service of a nonforum defendant (by filing an answer in state court) authorized removal where there was complete diversity and no forum defendants had been properly joined and served. *Id.* at *2–3. The citizenship of an unserved forum defendant did not implicate the forum-defendant rule. *Id.*

Finally, the *Carrs* court faced a situation similar to but distinguishable from this case. There, removal occurred seven days after the case was filed and one day before service. Similarly, *Carrs* involved a pre-service removal eight days after the case was filed in state court. 2012 WL 1945629, at *1. But distinguishably, removal in *Carrs* predated service of the forum defendant by twenty-seven days. *Id.* One of the key concerns over snap removals is the possibility that the extremely quick timing of the removal is intentional gamesmanship and forum manipulation that defeats congressional intent. See *Confer*, 61 F. Supp. 3d at 306. It is unclear whether removal in *Carrs* was designed to occur before plaintiffs could serve a forum defendant. *Id.* at *1. This distinguishes *Carrs* and limits it to some degree. Despite this, the *Carrs* court adopted the same plain language approach as the *Davis* court. *Id.* at *2–3. Further, both courts reached the same conclusion.

The parties' briefing addresses these three cases and numerous others from districts across the United States, fully outlining the split in authority. Their arguments follow the lines of cases on each side of the split, and essentially boil down to the contest of plain language versus legislative

intent. Considering both, the Court begins with the plain language of the statute.

**B.**     *Plain Language of 28 U.S.C. § 1441(b)(2)*

It is the responsibility and function of the courts to construe statutory language "so as to give effect to the intent of Congress." *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940). Initially, courts discern congressional intent from the plain language of the existing statutory text. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). The plain language of the forum-defendant rule prohibits removal on diversity grounds when a forum defendant is "properly joined and served." 28 U.S.C. § 1441(b)(2). The statute clearly provides that the citizenship of an unserved forum defendant should not be considered in determining whether the forum-defendant rule is satisfied. *Davis*, 2001 WL 1149355, at \*2. If a forum defendant is named in an action and a nonforum defendant wishes to remove, "the nonforum defendant must do so before the [forum defendant] is served." *Carrs*, 2012 WL 1945629, at \*2.

Additionally, the Court does not "construe statutory phrases in isolation; [it] read[s] statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 (1984). In reading the statute as a whole, the Court finds the "properly joined and served" language appears in both forum-defendant rule and the removal statute's unanimity requirement, mentioned above. 28 U.S.C. §§ 1441(b)(2) & 1446(b)(2)(A). Under the unanimity requirement, all defendants removing under the general removal statute must join in or consent to removal if they have been "properly joined and served." The Fifth Circuit has held that this language requires service before a defendant is considered for unanimity purposes. *Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014). This further supports the conclusion that section 1441(b)(2) requires service before a forum defendant is considered for forum-defendant rule purposes.

Applying the statute's plain language, the Court concludes that the Chesapeake Defendants' snap removal was proper. While Plaintiffs correctly argue that section 1141(b)'s plain language requires at least one defendant to have been served before removal is appropriate, they overlook, that Chesapeake Defendants' Answer in state court constituted service. *See Davis*, 2001 WL 1149355, at *3. Thus, Chesapeake Defendants complied with the letter of the statute by filing an answer and removing before Plaintiffs served the forum defendants. Plaintiffs might counter this characterization with the argument that allowing Chesapeake Defendants' snap removal would produce an absurd result contrary to legislative intent, and thus the Court should remand. *See* Pls.' Br. in Supp. 19.

## C.   *Absurd Result Exception and Legislative Intent*

When plain language leads to an absurd or futile result, courts must look beyond the words to the purpose of the act. *Lamie*, 540 U.S. at 534; *Am. Trucking Ass'ns*, 310 U.S. at 543; *Waggoner v. Gonzales*, 488 F.3d 632, 638 (5th Cir. 2007) ("We are mindful of the common mandate of statutory construction to avoid absurd results."). Even the most ardent textualists agree that to avoid this result, courts may consider the background of the statute and the legislative history of its adoption to determine legislative intent. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527 (1989) (Scalia, J., concurring). Simply, plain language application gives effect to congressional intent, but a literal application that leads to an absurd result does not. So when an absurd result occurs, courts may look past the plain language of the statute for guidance.

Multiple courts have examined the background and legislative history of the forum-defendant rule. *See, e.g., Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1364 (N.D. Ga. 2011); *Sullivan v. Novartis Pharmaceuticals Corp.*, 575 F. Supp. 2d 640 (D.N.J. 2008). As for background, these examinations outline policies behind diversity jurisdiction based removal and the forum-defendant

rule. Allowing diversity jurisdiction based removal protects out-of-state defendants from the possible prejudices of litigating in the plaintiff's home state court. *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006). It provides defendants with access to the unbiased forum of federal court. The possibility of prejudice vanishes, however, when plaintiffs seek to litigate in the defendants' home state court. *See id.* When this happens, the forum-defendant rule limits defendants' ability to remove on diversity grounds and restores the plaintiff's right to select the forum. *Id.*

As for legislative history, removal to federal court has been available to defendants since the enactment of the Judiciary Act of 1789. *Sullivan*, 575 F. Supp. 2d at 644. The original removal statute implicitly included the forum-defendant rule, but did not include the "properly joined and served" language. *Hawkins*, 785 F. Supp. 2d at 1375. This was not added until 1948, when Congress explicitly codified the forum-defendant rule with the "properly joined and served" language. *See* 28 U.S.C. § 114 (1940); 28 U.S.C. § 1441(b) (1948). Original removal jurisprudence had run into the problem of parties attempting to exploit the removal system to gain access to federal court or force cases to remain in state court by improper joinder. *See, e.g., Pullman Co. v. Jenkins*, 305 U.S. 534, 540–41 (1939).The legislative history associated with the 1948 enactment does not explain the purpose of the "properly joined and served" language, but presumably, Congress added it to prevent improper joinder and abuse of the forum-defendant rule. *Sullivan*, 575 F. Supp. 2d at 643. Recently, Congress revisited the forum-defendant rule in the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (FCJVCA). Pub. L. No. 112-63, 125 Stat. 758. The FCJVCA dramatically overhauled the language of the removal statute, but left the forum-defendant rule intact without changing the "properly joined and served" language. The associated house report says nothing about snap removal. See H.R. Rep. No. 112-10, at 11–12, *reprinted in* 2011 U.S.C.C.A.N. 576, 580

The legislative history does not reveal a discernable legislative intent regarding snap removal. On one hand, the 1948 Congress appears to have added the "properly joined and served" language to prevent gamesmanship in the form of improper joinder, and could not have anticipated the technological advances that would allow for snap removal. *See Sullivan*, 575 F. Supp. 2d at 645–47. So it makes sense that using the language to prevent gamesmanship in the form of snap removal would align with congressional intent. *Id.* On the other hand, Congress is "presumed to have knowledge of its previous legislation when making new laws," *United States v. Zavala-Sustaita*, 214 F.3d 601, 606 n.8 (5th Cir. 2000); is presumed to be "knowledgeable about existing law pertinent to the legislation it enacts," *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 185 (1983); and is "presumed to be aware of, and to adopt, a judicial interpretation of a statute when it reenacts that law without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 231 (2009). This means that Congress enacted the FCJVCA presumptively considering the previous forum-defendant rule language, the rule's underlying policy, and the current split in judicial opinion on how to treat snap removal, but chose to remain silent. So it stands to reason that Congress either has no position on snap removal, has implicitly adopted one of the diverging judicial interpretations on the issue, or stands by the plain language of the FCJVCA. This is, at best, inconclusive. Thus, the Court cannot rely on legislative history. Therefore, it turns to the policies underlying diversity jurisdiction-based removal and the forum-defendant rule to determine whether the permitting the practice of snap removal produces an absurd result as argued by Plaintiffs.

Plaintiffs argue that literal application of the "properly joined and served" language would produce absurd results because literal application would allow both non-forum and forum defendants to use snap removals to exploit section 1441(b)(2)'s language and circumvent the forum-defendant

rule. PLS.' Br. in Supp. 19–20. The Court disagrees. The two scenarios are patently different in result. One yields an absurd result while the other does not.

1.    Forum defendant

First, allowing a *forum* defendant to use the language of the forum-defendant rule to circumvent the forum-defendant rule yields an undeniably absurd result. *See Ethington v. General Elec. Co.*, 575 F. Supp. 2d 855, 860–64 (N.D. Ohio 2008) (collecting cases); *see also* 16-107 James Wm. Moore et al., Moore's Federal Practice § 107.55[2] (3d ed. 2015) (describing modern trend to apply forum-defendant rule against forum defendants even when no forum defendant has been served). To abide such a practice by forum defendants turns on its head the legislative policy that allows defendants to remove to federal court on diversity grounds due to the possible prejudice of trying a case in a biased state forum. *See Lively*, 456 F.3d at 940. Because no policy basis exists to allow forum defendants into federal court, the result also collides with the policy limiting federal jurisdiction and the well-established preference for remand.[9] Thus, allowing a forum defendant to engage in snap removal reaches an untenable result.[10] Therefore, courts must look past section 1441(b)(2)'s plain language to the purpose of the removal statute and, accordingly, remand a forum defendant's snap removal.

2.    Nonforum defendant

On the other hand, a *nonforum* defendant's use of snap removal does not yield the same

---

[9] With snap removal, complete diversity exists, which means the issue posed is procedural, not jurisdictional. *See Carrs*, 2012 WL 1945629, at *3. As a result, the Court considers the policy basis and not the jurisdictional basis to determine whether removal is proper.

[10] It appears that federal district courts in Texas already avoid reaching this absurd result. To remove, the forum defendant must first answer or appear. *See Davis*, 2001 WL 1149355, at *2. In Texas, this constitutes service, which means any removal by a forum defendant would violate the forum-defendant rule.

untenable result. *See North v. Precision Airmotive Corp.*, 600 F. Supp. 2d 1263, 1268 (M.D. Fla. 2009) (describing this as the majority view); 14B Charles A Wright et al., Federal Practice and Procedure § 3723 (4th ed. 2009) [hereinafter Wright & Miller] (explaining that the "properly joined and served" language implies that a "diverse but resident defendant who has not been served may be ignored in determining removability" under section 1441(b)). Even if the result reached is unfair, and, as Plaintiffs assert, the product of gamesmanship, it is neither absurd nor plainly at odds with the policy of the legislation. *See Am. Trucking Ass'ns*, 310 U.S. at 543. In fact, this result aligns with the legislative policy to provide an unbiased federal forum to nonforum defendants. And because a policy basis exists to allow nonforum defendants into federal court, this result does not improperly expand federal courts' limited jurisdiction. Thus, allowing a nonforum defendant's snap removal reaches neither an absurd nor unreasonable result. Therefore, courts should apply the plain language of section 1441(b)(2) and should not remand a nonforum defendant's snap removal.

**D.     Conclusion**

Chesapeake Defendants' snap removal to federal court bears the telltale signs of gamesmanship and forum manipulation. Plain language clearly dictates that the Court deny remand. Denying remand does not reach an absurd or unreasonable result. This conclusion turns on the fact that Chesapeake Defendants are nonforum defendants. Congress is aware of the split in judicial authority regarding snap removal, and is free to amend and "correct any perceived inequities or unintended consequences." *Carrs,* 2012 WL 1945629, at *3. Courts cannot substitute their own judgment for that of Congress. In the absence of additional congressional guidance or an absurd result, courts must apply the statute's plain language. Chesapeake Defendants did not violate the letter of the statute. Therefore, Chesapeake Defendants' snap removal was proper. This conclusion

is consistent with the decisions of other courts in the Northern District of Texas[11] and with the majority of districts in the Fifth Circuit.[12]

Additionally, Plaintiffs inform the Court of their concerns that there is at least one other pending snap removal case in the Northern District of Texas, and that they "anticipate that additional cases will be filed against these Defendants in state court and that Defendants will attempt to remove those cases as well." Pls.' Br. in Supp. 21; Doc. 21, App. 84 (3:15-cv-2170-P). They argue these concerns should affect the Court's decision. The approach set out above satisfies any concerns. So far as the case pending in a different court in this District, it is factually distinguishable from this case as the removing party is a forum defendant. And for the anticipated cases, plaintiffs can ensure they remain in state court by filing cases against and serving forum defendants before joining nonforum defendants. This approach invokes the forum-defendant rule, even against forum defendants attempting snap removal.

## IV.

## INTERLOCUTORY APPEAL LEGAL STANDARD

Section 1292(b) expressly permits a district court to certify an order for interlocutory appeal only if it is "of the opinion" that the order (1) "involves a controlling question of law," (2) "as to

---

[11] See generally, Carrs, 2012 WL 1945629, at *2–3; Davis, 2001 WL 1149355, at *2–3; Recognition Commc'ns, Inc., 1998 WL 119528, at * 3 n.3.

[12] See generally Harvey v. Shelter Ins. Co., No. 13-392, 2013 WL 1768658, at *2 (E.D. La. Apr. 24, 2013); Holmes v. Lafayette, No. 4:11CV021-B-S, 2013 WL 654449, at *1 (N.D. Miss. Feb. 21, 2013); Carrs, 2012 WL 1945629, at *2–3; Evans v. Rare Coin Wholesalers, Inc., No. 4:09CV259, 2010 WL 595653, at *2 (E.D. Tex. Jan. 28, 2010); Ott v. Consolidated Freightways Corp. of Delaware, 213 F. Supp. 2d 662, 666 (S.D. Miss. 2002); Maitra v. Mitsubishi Heavy Indus., Ltd., No. CIV.A.SA01CA0209FBNN, 2002 WL 1491855, at *2 (W.D. Tex. Mar. 29, 2002); but see Grizzly Mountain Aviation, Inc. v. McTurbine, Inc., 619 F. Supp. 2d 282, 286 n.5 (S.D. Tex. 2008).

which there is substantial ground for difference of opinion," and (3) "that an immediate appeal from

the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Courts have not always agreed on the contours of section 1292(b). For example, at times,

courts including the Fifth Circuit have held that § 1292(b) appeals are appropriate under only "big"

cases or "exceptional" circumstances. *Clark-Dietz and Assocs.-Eng'rs v. Basic Constr. Co.*, 702 F.2d

67, 69 (5th Cir. 1983) (explaining that interlocutory appeals are permitted only under "exceptional"

circumstances); 16 Wright & Miller, *supra*, § 3929 nn.12 & 16 (collecting cases holding

interlocutory appeal appropriate only in "big" or "exceptional" cases).

Conversely, at other times, courts—the Fifth Circuit included—have employed a more

flexible approach to section 1292(b) appeals. In *Hadjipateras v. Pacifica, S.A.*, Judge Brown promoted

a more relaxed application of the provision:

> Each application is to be looked at . . . in the light of the underlying purpose reflected
> in the statute . . . . [I]t was a judge-sought, judge-made, judge-sponsored enactment.
> Federal Judges from their prior professional practice, and more so from experience
> gained in the adjudication of today's complex litigation, were acutely aware of two
> principal things. First, certainty and dispatch in the completion of judicial business
> makes piecemeal appeal as permitted in some states undesirable. But second, there
> are occasions which defy precise delineation or description in which as a practical
> matter orderly administration is frustrated by the necessity of a waste of precious
> judicial time while the case grinds through to a final judgment as the sole medium
> through which to test the correctness of some isolated identifiable point of fact, of
> law, of substance or procedure, upon which in a realistic way the whole case or
> defense will turn. The amendment was to give to the appellate machinery of § 1291
> through § 1294 a considerable flexibility operating under the immediate, sole and
> broad control of Judges so that within reasonable limits disadvantages of piecemeal
> and final judgment appeals might both be avoided. It is that general approach rather
> than the use of handy modifiers–which may turn out to be Shibboleths–that should
> guide us in its application and in determining whether the procedure specified has
> been substantially satisfied.

290 F.2d 697, 702–03 (5th Cir. 1961) (citations and footnotes omitted); *see also* Wright & Miller,

- 16 -

§ 3929 n.18 (quoting *Ex parte Tokio Marine & Fire Ins. Co.*, 322 F. 2d 113, 115 (5th Cir. 1963))

(criticizing other courts' "epithets" that section 1292(b) is to be "'sparingly applied'").

Regardless of the approach—rigid or more flexible—some common ground can be gleaned

from both ends of the spectrum. First, section 1292(b) is not a vehicle to question the correctness

of a district court's ruling or to obtain a second, more favorable opinion. *McFarlin v. Conseco Serv.,*

*LLC,* 381 F.3d 1251, 1256 (11th Cir. 2004) (quoting S. Rep. No. 85-2434, *reprinted in* 1958

U.S.C.C.A.N. 5255, 5260–61)). Rather, district courts should treat it as statutory direction to

decide "the probable gains and losses of immediate appeal." Wright & Miller, § 3930. Second, this

decision is firmly within the district court's discretion. *Cheney v. U.S. Dist. Court for Dist. of*

*Columbia*, 542 U.S. 367, 405 n.9 (2004) (Ginsburg, J., dissenting) (instructing that discretion for

a section 1292(b) appeal lies "in the first instance in the district court's sound discretion"). Third,

in making its decision, the district court must consider section 1292(b)'s three factors.

## V.

## INTERLOCUTORY APPEAL ANALYSIS

The Court will address the "substantial ground for difference of opinion" factor as it is

dispositive. This factor has been described as the least troubling for district courts. Wright &

Miller, § 3930 (district courts "have not been bashful about refusing to find substantial reason to

question a ruling of law"). Nonetheless, of all the section 1292(b) criteria, this one is possibly the

least predictable in application. Perhaps, as one commentary on section 1292(b) recognized over

thirty years ago, this is because "[d]egrees of legal doubt escape precise quantification." Note,

*Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b),* 88 Harv. L. Rev. 607, 623

(1975). That same commentary proposed a standard "that would require a trial court to believe

- 17 -

that a reasonable appellate judge could vote for reversal of the challenged order" before the disagreement would be considered substantial under section 1292(b). *Id.* In accord with this standard, courts have found substantial ground for difference of opinion where:

> [A] trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

4 Am. Jur. 2d *Appellate Review* § 123 (2015). However, courts have not found substantial ground for difference of opinion where the disagreement is among courts outside of the district court's circuit. *Id.* (citing *Ryan, Beck & Co., LLC v. Fakih*, 275 F. Supp. 2d 393 (E.D.N.Y. 2003); *Marlin v. U.S. Trustee*, 333 B.R. 14 (W.D.N.Y. 2005)). Simply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which substantial disagreement exists. *Id.* In the end, "substantial" means just that—significantly great. Merriam-Webster's Collegiate Dictionary 1174 (10th ed. 1998).

Though how to treat snap removal is an issue of first impression for this Court, a majority of district courts in the Fifth Circuit have addressed snap removals or quasi snap removals, at least in passing, and there is agreement with the approach and result this Court reached. *Supra* note 12. Moreover, the approach and result reached above aligns with the opinions of other district courts in the Northern District of Texas. *Supra* note 11. The sole case in disagreement, *Grizzly Mountain Aviation, Inc.*, addresses snap removal in dicta, in a footnote, in response to what it perceived to be "forum manipulation." 619 F. Supp. 2d at 286 n.5. This is by no means "substantial."

The Court recognizes the disagreement outside of this circuit, *see Carrs*, 2012 WL 1945629, at *2 (citing *Hutchins v. Bayer Corp.*, No. 08-640, 2009 WL 192468, at *10–11 (D. Del. Jan. 23,

- 18 -

2009) (collecting cases)), but within the circuit, there is consensus. There is no substantial or significantly great disagreement. Here, the parties simply disagree on applicable precedent. Thus, there is no "substantial ground for difference of opinion." Therefore, this Court, in its discretion, does not certify this order denying remand for interlocutory appeal.

## VI.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Remand and Conditional Motion to Certify for Interlocutory Appeal (Doc. 20) and its Motion to Strike (Doc. 56) are **DENIED**.

SO ORDERED.

Dated: October 20, 2015.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE